## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ELIAS KARKALAS, M.D.** | **: CIVIL ACTION** |
| | : |
| **v.** | **: NO. 19-948** |
| | : |
| **LINDA MARKS, ESQUIRE, *et al.*** | : |

## MEMORANDUM

**KEARNEY, J.**                                                                                    **July 31, 2019**

We entrust our federal investigators and prosecutors with substantial power to interrupt lives to challenge conduct they believe violates the law. They must balance their enforcement vigor with seasoned discretion. As presented today, being indicted, arrested, incarcerated and tried is undoubtedly a traumatic series of events for a Pennsylvania medical doctor who believes approving internet prescriptions for Fioricet did not violate the Controlled Substances Act. After spending time in a Philadelphia jail before trial, the United States tried the doctor and co-defendants in the District of Minnesota but then voluntarily dismissed the Controlled Substances Act charges during the trial. The Minnesota federal jury found the United States did not prove its case and acquitted the doctor and his co-defendants of all remaining charges. Rather than seek remedies provided by Congress like one of his co-defendants, the doctor now sues the United States, its Washington D.C. prosecutor, and the Drug Enforcement Agency's investigator from Minnesota alleging they deprived him of civil rights under the Fourth Amendment. Unlike civil rights claims against state officials, claims against federal officials and the United States are allowed only in strictly limited instances and, as directed by Supreme Court, we may not extend these remedies against federal officials beyond those already recognized.

The United States did not prove the doctor's guilt at trial and the doctor is not incarcerated. He seeks redress. But we lack personal jurisdiction over the Washington D.C. prosecutor and Minnesota investigator in Pennsylvania. Even if we could exercise personal jurisdiction over the Washington prosecutor and Minnesota investigator, the doctor cannot plead the prosecutor and investigator deprived him of his constitutional rights in pursuing charges relating to prescribing Fioricet which some (but not all) courts have recognized. Our elected representatives in Congress defined the remedies and we may not expand those remedies. They are also entitled to immunity. The doctor also fails to plead claims against the United States under the Federal Tort Claims Act or a malicious prosecution theory. We grant the United States' and its officials' Motions to dismiss in the accompanying Order.

## I.  Alleged facts.

Dr. Elias Karkalas served as medical director at Independence Blue Cross of Pennsylvania while managing a private practice in King of Prussia, Pennsylvania.[1] Before 2013, Dr. Karkalas began working with Rx Limited, an online pharmacy company, approving requests on the internet for prescription medications.[2] He insisted Rx Limited did not sell controlled substances.[3]

Dr. Karkalas approved requests for the drug Fioricet.[4] Fioricet contains butalbital, a Schedule III controlled substance under the Controlled Substances Act, along with caffeine and acetaminophen.[5] Dr. Karkalas did not believe Fioricet is a controlled substance, nor had the Food and Drug Administration designated Fioricet a controlled substance.[6] Dr. Karkalas used the Physician's Desk Reference, an authoritative source for doctors, to determine Fioricet is a non-controlled medication.[7]

The Drug Enforcement Agency investigated the diversion of prescription drugs into illegal markets.[8] Diversion Investigator Kimberly Brill, a Minnesota citizen, believed Rx Limited

2

prescribed controlled substances without a doctor-patient relationship in violation of the Controlled Substances Act.[9] Although Investigator Brill believed Fioricet is a controlled substance, she discovered during her investigations the Food and Drug Administration had not designated Fioricet a controlled substance.[10]

Investigator Brill brought her investigation concerning Rx Limited to the United States Attorney's Office in Minneapolis, but the Office declined to prosecute.[11] Investigator Brill then brought the case to Attorney Linda Marks, a citizen of Washington, D.C., in the Department of Justice's Consumer Protection Branch.[12] Attorney Marks agreed to prosecute.[13] Investigator Brill and Attorney Marks alleged Rx Limited constituted an "international conspiracy" to illegally sell controlled substances online.[14]

On November 13, 2013, a grand jury in the United States District Court of Minnesota indicted Dr. Karkalas and ten other defendants involved with Rx Limited on thirty-eight counts of violating the Controlled Substances Act, mail and wire fraud, and conspiring to launder money.[15] The grand jury indicted Dr. Karkalas under several provisions of the Controlled Substances Act: Section 841(a) prohibiting distribution of a controlled substance, Section 841(h) prohibiting distribution of controlled substances on the internet, and Section 831 requiring an online pharmacy display certain licensure information on its homepage.[16] Attorney Marks and Investigator Brill allegedly told the grand jury: (1) Fioricet is a "controlled medication"; (2) Dr. Karkalas "was aware that Fioricet was a controlled medication"; and, (3) Dr. Karkalas "would continue to prescribe [Fioricet] in the same manner that he had."[17]

Upon issuance of a warrant following the indictment, unnamed officials arrested Dr. Karkalas at his King of Prussia office.[18] The United States held him in the Federal Detention Center in Philadelphia for two months.[19] He then spent two weeks in an Oklahoma facility and two

months in a federally-contracted jail in Minnesota.[20] He spent the six weeks before trial in a halfway house.[21]

The United States did not apprehend three of the indicted defendants. Three of the eleven defendants plead guilty and five defendants—including Dr. Karkalas—went to trial.[22]

In meetings and interviews before trial, Dr. Karkalas unsuccessfully tried to persuade Attorney Marks and Investigator Brill Fioricet is not a controlled substance.[23] Attorney Marks "sought to intimidate witnesses" like Dr. Karkalas's nurse and office manager to testify against him.[24]

Attorney Marks tried the five defendants together in the District of Minnesota for conspiracy to distribute Fioricet online without valid prescriptions under the Controlled Substances Act, mail and wire fraud, and money laundering.[25] Attorney Marks dropped the Controlled Substances Act charges midway through trial.[26] On March 17, 2017, a jury acquitted Dr. Karkalas and the other four defendants on all remaining counts.[27] Following acquittal, one of Dr. Karkalas's co-defendants moved for an award of attorney's fees under the Hyde Amendment arguing bad-faith prosecution.[28] The trial court held, while the prosecution made mistakes during trial, Dr. Karkalas's co-defendant failed to show "frivolous, vexatious, or bad faith conduct."[29] Dr. Karkalas decided not to move for attorneys' fees.

He instead decided to sue Attorney Marks, Investigator Brill, and the United States for prosecuting him and detaining him before trial. He alleges Attorney Marks and Investigator Brill presented "false and misleading evidence and testimony to the Grand Jury" to secure an indictment.[30] He alleges Fioricet is not a controlled substance under the Act, and Attorney Marks and Investigator Brill knew Fioricet is not a controlled substance but still prosecuted him. Dr. Karkalas also alleges Attorney Marks and Investigator Brill had no evidence Dr. Karkalas knew

4

Fioricet is a controlled substance. He alleges Attorney Marks's dismissal of the Controlled Substance Act charges during trial signaled "the case was a sham from the beginning and should have never been initiated."[31]

Dr. Karkalas sues Attorney Marks and Investigator Brill for unlawful prosecution and pretrial detention under the Fourth Amendment alleging "malicious prosecution and knowing presentation of false and misleading testimony, and evidence to the Grand Jury."[32] He sues the United States under the Federal Tort Claims Act alleging "malicious prosecution committed by investigative or law enforcement officers of the United States, acting within the scope of their employment."[33]

## II. Analysis.[34]

Attorney Marks and Investigator Brill move to dismiss Dr. Karkalas's First Amended Complaint arguing (1) we lack personal jurisdiction over them, (2) venue is improper in the Eastern District of Pennsylvania, (3) we should not imply a constitutional remedy against federal officials under these circumstances, and (4) absolute and qualified immunity bars Dr. Karkalas's claims.[35]

The United States separately move to dismiss the First Amended Complaint arguing (1) Attorney Marks and Investigator Brill are not "investigative or law enforcement officers" under the Federal Tort Claims Act, (2) the discretionary function exception bars Dr. Karkalas's claims, and (3) Dr. Karkalas fails to state a claim for malicious prosecution.[36]

We lack personal jurisdiction over Attorney Marks and Investigator Brill.   Venue over them and the United States is proper.  But we still dismiss the case as Dr. Karkalas cannot state claims against Attorney Marks, Investigator Brill or the United States.

5

**A.** **We dismiss Dr. Karkalas's claims for unlawful prosecution and pretrial detention against Attorney Marks and Investigator Brill.**

**1.** **We lack personal jurisdiction over Attorney Marks and Investigator Brill.**

Attorney Marks and Investigator Brill argue we lack personal jurisdiction over them because they are nonresident defendants lacking minimum contacts with Pennsylvania. We analyze personal jurisdiction based on Pennsylvania law.[37] The Pennsylvania General Assembly allows personal jurisdiction "to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States."[38] Under the Due Process Clause, we have personal jurisdiction provided Attorney Marks and Investigator Brill have "certain minimum contacts with . . . [Pennsylvania] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."[39]

Attorney Marks and Investigator Brill argue they lack "minimum contacts" with Pennsylvania. The Supreme Court instructs we focus on "the relationship among the defendant, the forum, and the litigation" to determine whether "minimum contacts" exist.[40] The relationship must arise from contacts the "'defendant **himself**' creates with the forum State."[41] We focus on "the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there."[42] "The plaintiff cannot be the only link between the defendant and the forum," and the defendant's conduct "must form the necessary connection with the forum State that is the basis for its jurisdiction over him."[43] "[A] defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction."[44] We may only exercise jurisdiction over a defendant "based on [the defendant's] own affiliation with the State, not based on the 'random,

6

fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State."[45]

In *Walden v. Fiore*, a Drug Enforcement Agency officer seized cash from an airplane passenger in Atlanta while the passenger waited for a flight home to Las Vegas.[46] After the passenger returned to Las Vegas, his attorney requested return of the cash. The passenger alleged the officer falsified a probable cause affidavit seeking forfeiture of the money, but the United States never filed a forfeiture complaint and the Drug Enforcement Agency returned the money. The passenger sued the officer, a Georgia resident, in the District of Nevada alleging illegal seizure. The district court dismissed for lack of personal jurisdiction, but the Court of Appeals for the Ninth Circuit reversed explaining the officer submitted a falsified affidavit in Georgia knowing it would affect the passenger having "significant connection" to Nevada.[47]

The Supreme Court reversed the court of appeals and held the district court lacked personal jurisdiction over the officer.[48] The Supreme Court explained the court of appeals improperly focused on the passenger's connection with Nevada, not the officer's connections.[49] While the officer directed his conduct at the passenger, because he knew the passenger had a connection to Nevada, the officer's conduct had nothing to do with Nevada independent of the passenger. Had the passenger lived in California or Mississippi, the officer would have no connection to Nevada. The Supreme Court explained "the defendant, not the plaintiff or third parties . . . must create contacts with the forum State" to establish personal jurisdiction.[50]

Dr. Karkalas responds Attorney Marks and Investigator Brill "appeared in the Eastern District of Pennsylvania to investigate the claims, [met] with witnesses, and secured the pre-trial detention of Dr. Karkalas from U.S. Magistrate Judge Jacob Hart of the Eastern District of Pennsylvania."[51] He alleges Attorney Marks interviewed Dr. Karkalas in Pennsylvania and used

7

information she obtained in prosecuting him.[52] Attorney Marks admits she came to Pennsylvania for Dr. Karkalas's pretrial hearing.[53] Dr. Karkalas alleges Investigator Brill investigated his Pennsylvania conduct in support of presenting the United States' criminal case.[54] He further alleges their conduct caused his pre-trial custody in a Pennsylvania jail for months.

Dr. Karkalas is "the only link between the defendant[s] and the forum."[55] Attorney Marks and Investigator Brill did not themselves create a contact with Pennsylvania independent of Dr. Karkalas. Attorney Marks appeared for Dr. Karkalas's detention hearing in Philadelphia. She created a contact with the justice system in Pennsylvania. She used the federal court and jail in Pennsylvania to move forward on the Minnesota trial. There is no plead nexus between Investigator Brill and Pennsylvania. Like *Walden*, the individuals' conduct affected Pennsylvania only through the link with Dr. Karkalas. Had the United States arrested and detained Dr. Karkalas in New Jersey, Attorney Marks and Investigator Brill would have no contact with Pennsylvania.

Personal jurisdiction would seem to be a close call based on the conduct directed at Dr. Karkalas's Pennsylvania practice, detention hearing, and jail time in a Pennsylvania prison. But under *Walden*, the challenged conduct is related only to Dr. Karkalas. This nexus is insufficient for personal jurisdiction. Dr. Karkalas fails to articulate a credible basis for Pennsylvania's personal jurisdiction over Attorney Marks and Investigator Brill. We dismiss Attorney Marks and Investigator Brill without prejudice for lack of personal jurisdiction.

## 2. Venue is proper.

Investigator Brill and Attorney Marks alternatively argue venue is improper because they do not reside in Pennsylvania and no events giving rise to the claim occurred in Pennsylvania. But if we found personal jurisdiction over them, we would enjoy proper venue over them as we do for the claims the United States.

8

Under 28 U.S.C. § 1391(b), Dr. Karkalas may sue in:

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.[56]

Dr. Karkalas admits Attorney Marks and Investigator Brill do not reside in Pennsylvania. He instead alleges "acts giving rise" to his claims occurred in this forum.[57] Under § 1391(b)(2), our Court of Appeals explained the test for venue is "not the defendant's 'contacts' with a particular district, but rather the location of those 'events or omissions giving rise to the claim[.]'"[58] To determine whether the events are "substantial," we must look at "the nature of the dispute."[59] Dr. Karkalas need not show our District is "the locus of the majority of the events or omissions."[60] But "events or omissions that might only have some tangential connection with the dispute in litigation are not enough" to establish venue under § 1391(b)(2).[61]

Attorney Marks and Investigator Brill argue venue is improper because "[Dr.] Karkalas was prosecuted in Minnesota."[62] But Dr. Karkalas sues for unlawful prosecution and pretrial detention under the Fourth Amendment. He alleges his arrest in this District at his King of Prussia office and unlawful pretrial detainment at the Federal Detention Center in Philadelphia for two months.[63] He alleges Attorney Marks appeared in the Eastern District of Pennsylvania to secure his pretrial detention before United States Magistrate Judge Jacob Hart of the Eastern District of Pennsylvania.[64] He more fundamentally alleges his prescribing medicine from his office in King of Prussia gave rise to the investigation, detention, and prosecution. These events bear more than a "tangential connection" with his claims as the alleged unlawful detention occurred in our District

9

and his prosecution stemmed from his arrest and conduct in this District. Dr. Karkalas shows a substantial part of the events giving rise to his claims occurred in the Eastern District of Pennsylvania.

Assuming we could find personal jurisdiction, we disagree with Attorney Marks and Investigator Brill and would hold venue is proper in our District.

### 3. We do not imply a *Bivens* cause of action against Attorney Marks and Investigator Brill.

Even assuming we enjoyed personal jurisdiction over Attorney Marks and Investigator Brill, Dr. Karkalas cannot state a claims for unlawful seizure and prosecution by them under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*.[65] While Congress established a damages remedy under 42 U.S.C. § 1983 against state officials for constitutional violations, it did not create an analogous statute for damages against federal officials.[66] But in *Bivens*, the Supreme Court implied a damages remedy under the Constitution against federal officials despite Congress's inaction.[67]

In *Bivens*, federal agents entered a man's house without a warrant, arrested and handcuffed him, and searched his house for drugs.[68] The man sued the federal agents for damages under the Fourth Amendment alleging a warrantless search and unreasonable seizure.[69] The district court dismissed his case and the court of appeals affirmed.[70] But the Supreme Court recognized an implied private cause of action for damages for a federal officer's violation of a person's Fourth Amendment rights.[71] The Supreme Court explained while Congress had not created a private cause of action against federal official for damages, the Supreme Court had the power to "adjust . . . remedies so as to grant the necessary relief" to protect a constitutional right.[72]

Since *Bivens*, the Supreme Court only recognized an implied private cause of action under the Constitution against federal officials in certain instances and discouraged extending its holding.

10

The Supreme Court explained it "has repeatedly refused to extend *Bivens* actions beyond the specific clauses of the specific amendments [of the Constitution] for which a cause of action has already been implied, or even to other classes of defendants facing liability under those same clauses."[73] In *Ziglar v. Abbasi*, the United States held hundreds of noncitizens on immigration charges under an executive policy following the September 11 terrorist attacks.[74] The noncitizens sued alleging executive officials responsible for the policy detained them longer than necessary under harsh conditions. They sued the wardens of the detention facilities for unlawful detention and unconstitutional conditions of confinement under *Bivens* alleging Fourth and Fifth Amendment violations.[75]

The Supreme Court explained expanding the *Bivens* remedy is now a "disfavored" judicial activity.[76] The Supreme Court recognized an implied action against federal officials in three cases: (1) *Bivens* itself—"a claim against FBI agents for handcuffing a man in his own home without a warrant" under the Fourth Amendment;[77] (2) "a claim against a Congressman for firing his female secretary" under the Fifth Amendment;[78] and, (3) "a claim against prison officials for failure to treat an inmate's asthma" under the Eighth Amendment.[79] But beyond these three cases, the Supreme Court refused to extend *Bivens* "to any new context or new category of defendants."[80] The Supreme Court found noncitizens' claims for unlawful detainment and unconstitutional conditions of confinement following a major terrorist attack did not resemble the three recognized *Bivens* claims, thus presenting a "new context" for a *Bivens* action.[81] The Supreme Court found the conditions of confinement claim differed from the claim in *Carlson v. Green*, explaining the noncitizens in *Ziglar* alleged failure to respond to grievances, while the prisoner in *Carlson* alleged failure to provide adequate medical care.[82] The Supreme Court cautioned "even a modest extension [of *Bivens*] is still an extension."[83]

11

The Supreme Court then explained "special factors" showed the Court should not imply a *Bivens* remedy: (1) a court should not inquire into the "formulation and implementation" of an executive policy and the "discussion and deliberation" leading to the policy[84]; (2) as the United States implemented the policy in response to a terrorist attack, a court in a *Bivens* action would inquire into "sensitive issues of national security"[85]; (3) the noncitizens had alternative remedies, including injunctive relief or writs of habeas corpus.[86] Concerning the conditions of confinement claim, the Supreme Court explained with the Prison Litigation Reform Act, Congress did not provide a "standalone damages remedy" against federal officials, suggesting Congress did not intend to extend *Bivens*.[87]

The Supreme Court instructed when facing a claim under *Bivens*, we must first determine whether the case presents a new context for a *Bivens* action.[88] We undertake a "rigorous inquiry . . . before implying a *Bivens* cause of action in a new context or against a new category of defendants."[89] A *Bivens* case presents a new context "[i]f the case is different in a meaningful way from previous *Bivens* cases decided by [the Supreme] Court[.]"[90] The Supreme Court gave examples of differences showing a case presents a new context including:

> the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.[91]

If the case presents a new context, we proceed with two separate inquires. We ask whether there is any "'alternative, existing process' capable of protecting the constitutional interests at stake."[92] A Congressionally-created "alternative remedial structure" limits our ability to imply a *Bivens* action.[93]

12

We also ask whether there are "special factors counseling hesitation" in extending *Bivens* to a new context.[94] We ask whether these factors show creating a damages action is a "decision for the Congress to make, not the courts."[95]

In *Lane v. Schade*, the District Court for the District of New Jersey applied the Supreme Court's holding in *Ziglar* and refused to extend *Bivens* to a malicious prosecution claim against federal officials.[96] A national park ranger arrested Mr. Lane suspecting public intoxication.[97] Mr. Lane argued the park ranger lacked probable cause for the arrest. The park ranger then searched Mr. Lane's car and found prescription drugs. In a bench trial, a United States prosecutor tried Mr. Lane for unlawful possession of drugs. The judge found the government "failed to sustain its burden of proof" and acquitted Mr. Lane.[98] Mr. Lane sued the United States prosecutor for malicious prosecution. The district court, citing *Ziglar*, explained the claim for malicious prosecution presented a new context for a *Bivens* action since it "d[id] not resemble the claims the Court has previously approved."[99] The court refused to recognize a *Bivens* action for Mr. Lane's malicious prosecution claim but did not ask whether an alternative remedy exists or whether special factors counseled against extending *Bivens*.[100]

The United States District Court for the Western District of Pennsylvania also refused to imply a *Bivens* action alleging a federal agent coerced a confession violating the prisoner's Fifth Amendment right.[101] The court found the prisoner had no alternative remedy besides a *Bivens* action but dismissed the claim holding special factors counseled against extending *Bivens*. The court explained Congress addressed coerced confessions in 18 U.S.C. § 3501 governing the admissibility of confessions.[102] But while Congress prohibited the United States from using coerced confessions in criminal cases, it did not create a private right of action for criminal defendants.[103] The court also explained implying a *Bivens* remedy in the criminal process context

13

would "flood the federal courts with constitutional damage claims by the many criminal defendants who leave the criminal process convinced that they have been prosecuted and convicted unfairly."[104]

We use the template in *Ziglar* to determine whether to imply a *Bivens* action for Dr. Karkalas's claims against Attorney Marks and Investigator Brill. We ask (1) whether Dr. Karkalas's case presents a "new context" for a *Bivens* actions; (2) if so, whether Congress created an "alternative, existing process for protecting [Dr. Karkalas's] interest"; and, (3) whether "special factors [exist] counselling hesitation in the absence of affirmative action by Congress."[105]

### a. Dr. Karkalas's claim presents a new context to imply a *Bivens* action.

Attorney Marks and Investigator Brill argue Dr. Karkalas's claim presents a *Bivens* action in a new context. We agree. Dr. Karkalas seeks relief for an unlawful prosecution and pretrial detention following allegedly false and misleading statements to a grand jury to secure an indictment for violations of the Controlled Substances Act.[106] His case most closely resembles *Bivens* itself, where a citizen sued federal agents for searching his house without a warrant and arresting him without probable cause.[107] But Attorney Marks and Investigator Brill argue Dr. Karkalas complains of illegal prosecution and pretrial detention following an indictment, not warrantless search and arrest. Unlike *Bivens*, resolution of Dr. Karkalas's claim necessitates an inquiry into the grand jury proceedings since he alleges false testimony before the grand jury. Such conduct presents a different context than the conduct in *Bivens*.[108]

Dr. Karkalas argues his case does not present a new context because *Bivens* involved Fourth Amendment claims.[109] But the Supreme Court in *Ziglar* explained a case can present a new context despite arising under an amendment in one of the three recognized *Bivens* claims.[110] The Supreme Court found the detainees' cases presented a new context despite the claims arising under

14

the Fourth and Fifth Amendments—amendments in two of the three recognized *Bivens* actions.[111] The Supreme Court instructed the correct test for determining whether a case presents a new context involves determining whether "the case is different in a meaningful way from previous *Bivens* cases decided by this Court."[112]

Dr. Karkalas also argues his case does not present a "new context" because the Supreme Court in *Manuel v. City of Joliet* recognized unlawful pretrial detention violated an individual's Fourth Amendment rights.[113] In *Manuel*, police officers tested a bottle of vitamins from Mr. Manuel's car and found they did not contain illegal drugs.[114] The police officers nonetheless arrested Mr. Manuel. A lab technician tested the pills and falsely reported the pills contained ecstasy. Mr. Manuel's pretrial detention and prosecution stemmed from the false arrest and report. Mr. Manuel sued the police officers and the City under § 1983 alleging unlawful detention and prosecution. The Supreme Court held Mr. Manuel could pursue a § 1983 claim against the police and the City for unlawful pretrial detention under the Fourth Amendment.[115]

Dr. Karkalas ignores the test in *Ziglar* for determining whether a case presents a new context: whether "the case is different in a meaningful way from previous *Bivens* cases decided by this Court."[116] The Supreme Court held Mr. Manuel could pursue a § 1983 action against state officials under the Fourth Amendment.[117] *Manuel* is a § 1983 case, not a *Bivens* case. Dr. Karkalas cannot rely on the Supreme Court's decision in *Manuel* to defeat the argument his case presents a "new context" for a *Bivens* action.

Dr. Karkalas's claims for unlawful prosecution and pretrial detention present a new context for a *Bivens* action. He is asking us to extend a damages remedy against federal officials for alleged false statements in the grand jury leading to a false indictment, arrest, detention and trial.

15

His claim rests upon his belief someone gave false testimony in a sealed grand jury proceeding. He does not show us a case extending *Bivens* in this context.

### b. Attorney Marks and Investigator Brill show an "alternative remedial structure" exists to protect Dr. Karkalas's interests.

In next determining whether to imply a *Bivens* action in a new context, we ask whether there is "any alternative, existing process for protecting the [injured party's] interest[.]"[118] An alternative remedial process provides "a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages."[119] A statutory remedy for a federal official's constitutional violation obviates the need for a *Bivens* action.[120]

Attorney Marks and Investigator Brill argue two processes exist to protect Dr. Karkalas's interest: (1) the grand jury proceeding and (2) a criminal defendant's ability to challenge the indictment or the prosecution. They argue Dr. Karkalas took advantage of these processes by moving to dismiss the indictment. The District Court for the District of Minnesota denied his motion finding the Drug Enforcement Agency did not exempt the sale of Fioricet without a prescription from criminal penalties under the Controlled Substances Act.[121]

Attorney Marks and Investigator Brill also argue Congress created an alternative remedial structure with the Hyde Amendment and the Unjust Conviction and Imprisonment Law. Under the Hyde Amendment, a criminal defendant acquitted on all charges may petition for attorneys' fees provided the United States prosecuted the defendant in bad faith.[122] Under the Unjust Conviction law, a criminal defendant can recover damages from the United States if he can prove a court "reversed or set aside [his conviction] on the ground that he is not guilty of the offense of which he was convicted."[123] If a criminal defendant can prove he is not guilty, he can recover up to $50,000 for each twelve-month period of wrongful incarceration.[124]

16

The Court of Appeals for the Eighth Circuit found the Hyde Amendment and Unjust Conviction law provide an "alternative remedy" weighing against implying a *Bivens* action for malicious prosecution.[125] In *Farah v. Weyker*, a grand jury indicted Mr. Farah for his involvement in a sex-trafficking conspiracy.[126] Like Dr. Karkalas, Mr. Farah alleged an investigating officer presented false testimony to the grand jury to secure the indictment.[127] The United States detained Mr. Farah before trial and a jury acquitted Mr. Farah. He sued the investigating officer under the Fourth Amendment for illegal prosecution and pretrial detention. Citing the Supreme Court's holding in *Ziglar*, the court of appeals refused to imply a *Bivens* action for Mr. Farah's claims. The court found the Hyde Amendment and the Unjust Conviction law constituted an "alternative remedial structure" and found implying a *Bivens* remedy would upset the structure.[128] The court of appeals explained with the Hyde Amendment, Congress intended to grant criminal defendants some relief by awarding attorneys' fees when the United States initiates bad-faith or frivolous prosecution.[129] With the Unjust Conviction law, Congress provided relief to criminal defendants wrongfully convicted.[130] Congress addressed relief for the charged defendant's alleged injuries with these two statutes.[131]

Mr. Farah argued he could not qualify for these remedies because (1) he had appointed counsel and (2) a jury acquitted, not wrongfully convicted, him—like Dr. Karkalas. But the court of appeals explained these factors cut against implying a *Bivens* action. The court explained if Mr. Farah had been wrongfully convicted or retained counsel, he would be eligible for relief. Congress chose to provide a remedy "for some victims of this particular type of injury, but not for others, suggest[ing] that it considered the issue and made a deliberate choice."[132] Extending remedies to someone like Mr. Farah would "upset the existing 'remedial structure'" Congress created.[133]

17

Mr. Farah also argued even if he did qualify under the Hyde Amendment or the Unjust Conviction law, these remedies failed to offer similar compensation as an award of damages. But the court explained the alternative remedies need not equate to damages. The court explained the Supreme Court held non-monetary "alternative remedies" like injunctions and habeas relief triggered the rule "when alternative methods of relief are available, a *Bivens* remedy usually is not."[134]

Dr. Karkalas makes the same arguments as Mr. Farah. He argues the alternative remedies under the Hyde Amendment and the Unjust Conviction law are "wholly inadequate" for the pain and suffering he experienced.[135] While we understand his frustration, we agree with the Court of Appeals for the Eighth Circuit Congress contemplated remedies for criminal defendants like Dr. Karkalas complaining of improper prosecution. Congress designed a remedial structure offering relief for wrongfully convicted criminal defendants and defendants with retained counsel against whom the United States pursued bad faith or frivolous litigation. For example, Dr. Karkalas's co-defendant moved for fees under the Hyde Amendment and the trial court found the co-defendant failed to show "frivolous, vexatious, or bad faith conduct" by Attorney Marks allowing an award of fees.[136]

Dr. Karkalas also alleges "bad faith prosecution" but he failed to move for fees under the Hyde Amendment.[137] Attorney's fees do not equate to damages, and a jury acquitted Dr. Karkalas making him ineligible for relief under the Unjust Conviction law. Congress nevertheless created a remedial structure and we should not upset the structure by implying a *Bivens* action here.

        **c.**    **Special factors exist counseling against implying a *Bivens* action for Dr. Karkalas's claims.**

We also ask whether there are "special factors counselling hesitation in the absence of affirmative action by Congress."[138] In doing so, we "weigh[ ] reasons for and against the creation

18

of a new cause of action, the way common law judges have always done."[139] We ask the critical question "'who should decide' whether to provide for a damages remedy, Congress or the courts?"[140] We should not imply a *Bivens* remedy "if there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy as part of the system for enforcing the law and correcting a wrong[.]"[141]

Attorney Marks and Investigator Brill argue several factors counsel against implying a *Bivens* action: (1) grand jury proceedings are secret, (2) Investigator Brill is not a traditional law enforcement officer, and (3) Congress expressly refused to provide a private cause of action and immunized the United States and its employees under a section of the Controlled Substances Act.

### i. The secrecy of grand jury proceedings counsels against implying a *Bivens* action.

Attorney Marks and Investigator Brill argue the secrecy of grand jury proceedings counsels against implying a *Bivens* action here. In *Farah*, the Court of Appeals for the Eighth Circuit found the secrecy of grand jury proceedings constituted a "special factor" counseling against a *Bivens* action.[142] The court explained Mr. Farah's claims alleging false information presented to the grand jury would require the court to determine "whether there was probable cause to charge the plaintiffs with a crime that would have justified their detention pending trial."[143] The court explained to determine whether the grand jury had probable cause to indict Mr. Farah, the court would necessarily have to (1) look at the grand jury record to see if probable cause existed and (2) interview grand jury members to determine whether the allegedly false testimony influenced grand jury members in returning an indictment.[144]

Dr. Karkalas argues the secrecy of the grand jury proceeding does not counsel against recognizing a *Bivens* action for malicious prosecution because courts recognize malicious prosecution claims under § 1983. But the court in *Farah* explained Congress in passing § 1983

recognized the encroachment into grand jury proceedings for actions against state officials and determined "the potential encroachment is worth it."[145] The court would not say the same for an action against federal officials "without any congressional guidance."[146]

We agree with the Court of Appeals for the Eighth Circuit the secrecy of grand jury proceeding counsels against recognizing a *Bivens* action for Dr. Karkalas's claims. Dr. Karkalas alleges Attorney Marks and Investigator Brill gave false testimony to the grand jury to secure an indictment against Dr. Karkalas.[147] His claim will necessarily lead to an inquiry into the grand jury proceeding and the testimony presented. Dr. Karkalas does not deny he sold Fioricet and Fioricet contains butalbital, a controlled substance. Considering the admitted evidence against him, his claim would require whether the alleged false testimony proximately caused his injury. Dr. Karkalas argues courts recognize malicious prosecution claims under § 1983 and such claims involve an inquiry into grand jury proceedings. But as the court of appeals explained in *Farah*, Congress contemplated this distinction in liability of federal and state officials in passing § 1983. It provided no similar remedy against federal officials. Congress must decide whether to provide a remedy.

### ii. Investigator Brill's status as a diversion investigator counsels against recognizing a *Bivens* action.

Investigator Brill argues we should not imply a *Bivens* remedy because she is a diversion investigator for the Drug Enforcement Agency and not a typical law enforcement officer. Investigator Brill cites *Vanderklok v. United States*.[148] After going through an airport checkpoint, Mr. Vanderklok threatened to file a complaint against a Transportation Security Administration screener, who then called the police and falsely reported Mr. Vanderklok threatened to bring a bomb on an airplane.[149] A jury acquitted Mr. Vanderklok and he then sued the screener alleging a *Bivens* action for retaliatory prosecution under the First Amendment.[150]

20

Our Court of Appeals declined to imply a *Bivens* remedy against airport screeners explaining they are not "investigative or law enforcement officers."[151] In deciding whether to imply a remedy, the court looked to the Federal Tort Claims Act and found Congress waived sovereign immunity for tort claims against "investigative or law enforcement officers."[152] The court further explained under Transportation Security Administration regulations, the Administration did not train screeners on probable cause, reasonable suspicion, or other constitutional doctrines governing law enforcement officers.[153] Screeners can only conduct administrative searches rather than criminal ones.[154] The court contrasted screeners with the Administration's designated law enforcement officers whom the Administration authorized to "carry and use firearms" and arrest suspects.[155]

Investigator Brill argues, like airport screeners, Drug Enforcement Agency Diversion Investigators are not traditional law enforcement officers. Under the regulation governing diversion investigators' powers, the Agency did not authorize them to carry firearms or make arrests, only authorizing the following conduct: (1) administering oaths and serving subpoenas; (2) conducting administrative inspections and executing administrative inspection warrants; (3) seizing property incident to compliance and registration inspections and investigations; and (4) seizing or placing controlled substances under seal.[156]

Investigator Brill's status as a diversion investigator constitutes a "special factor" counseling against implying a *Bivens* action against Investigator Brill. Like the airport screeners in *Vanderklok*, diversion investigators cannot carry firearms or make arrests. Diversion investigators conduct administrative searches and issue administrative warrants. Dr. Karkalas argues diversion investigators can take part in criminal investigations and Investigator Brill did in this case. But like *Vanderklok*, the Drug Enforcement Agency distinguished between "criminal

21

investigators" and "diversion investigators."[157] While Investigator Brill participated in a criminal investigation, we leave to Congress to decide whether to grant a remedy against a class of federal employees the Drug Enforcement Agency failed to classify as "criminal" investigators.

Investigator Brill's status as a diversion investigator counsels against implying a *Bivens* action.

### iii. Congress's failure to create a private right of action under the Ryan Haight Act counsels against recognizing a *Bivens* action.

Attorney Marks and Investigator Brill argue we should not imply a *Bivens* action because Congress refused to create a private cause of action under the Ryan Haight Act and immunized the United States and its employees. Congress passed the Ryan Haight Act, an amendment to the Controlled Substances Act, in 2008 to allow states to sue online pharmacy companies for damages and to enjoin the sale of controlled substances on the internet.[158] Congress granted district courts jurisdiction to entertain states' cases against online pharmacies for damages and injunctive relief.[159] But Congress explained "no private right of action is created under" the Ryan Haight Act.[160] Congress further provided a person may not bring civil action under the Ryan Haight Act against the United States or one of its employees.[161]

Dr. Karkalas declined to oppose this argument. Congress considered whether to create a private right of action under the Controlled Substances Act and chose not to. It also chose to immunize the United States under the Act. While this provision does not address Dr. Karkalas's claims, it shows Congress contemplated remedies for federal officials' violations under the Act. The decision to grant a remedy is better left to Congress.

Under the Supreme Court's guidance in *Ziglar*, Dr. Karkalas cannot pursue a *Bivens* action against Attorney Marks and Investigator Brill for unlawful prosecution and pretrial detention. Dr.

22

Karkalas's claim presents a "new context" for a *Bivens* action. Congress created a remedial structure for criminal defendants like Dr. Karkalas. One of Dr. Karkalas's co-defendants used the remedial structure in moving for attorneys' fees under the Hyde Amendment, but Dr. Karkalas did not. Even though Dr. Karkalas seeks damages rather than attorneys' fees, recognizing a *Bivens* cause of action would upset the existing remedial structure Congress created. Special factors also counsel against a *Bivens* action, including the secrecy of grand jury proceedings, Investigator Brill's status as a diversion investigator for the Drug Enforcement Agency, and Congress's decision not to create a private cause of action under the Act.

We do not imply a *Bivens* cause of action for Dr. Karkalas's claims against Attorney Marks and Investigator Brill.

### 4. Prosecutorial immunity bars Dr. Karkalas's claims against Attorney Marks and qualified immunity bars his claims against Attorney Marks and Investigator Brill.

Attorney Marks and Investigator Brill argue even if we imply a *Bivens* cause of action for Dr. Karkalas's case, the doctrines of prosecutorial immunity and qualified immunity bar his claims against them.

### a. Prosecutorial immunity bars Dr. Karkalas's *Bivens* claim against Attorney Marks.

Attorney Marks argues prosecutorial immunity bars Dr. Karkalas's claims against her. Absolute immunity bars claims against prosecutors under federal law for acts "'intimately associated with the judicial phase of the criminal process,' such as 'initiating a prosecution and . . . presenting the State's case.'"[162] Prosecutorial immunity applies even when a plaintiff alleges the prosecutor's "knowing use of false testimony before the grand jury and at trial."[163] Prosecutorial immunity also applies to "witness interviews generating evidence for judicial proceedings."[164]

23

Dr. Karkalas alleges Attorney Marks "interviewed witnesses in this District, met and interviewed Dr. Karkalas and personally obtained evidence that she would use in the prosecution of Dr. Karkalas."[165] He also alleges Attorney Marks made "false and misleading representations" to the grand jury in seeking an indictment against Dr. Karkalas.[166] He claims Attorney Marks tried to get Dr. Karkalas's nurse and office manager to testify against him.[167] Attorney Marks' alleged conduct involves generating evidence for judicial proceedings and presenting the United States' case.

Dr. Karkalas argues prosecutorial immunity does not apply to Attorney Marks's "administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings."[168] But Mr. Karkalas complains of Attorney Marks' generating and presenting evidence in support of prosecution, not unrelated administrative or investigatory duties. Because he complains of Attorney Marks's conduct directed to Dr. Karkalas's prosecution, prosecutorial immunity bars his claims against Attorney Marks.

**b. Qualified immunity bars Dr. Karkalas's *Bivens* claim against Attorney Marks and Investigator Brill.**

Attorney Marks and Investigator Brill argue even assuming absolute immunity does not apply, qualified immunity bars Dr. Karkalas's claims because Attorney Marks and Investigator Brill reasonably believed they could prosecute him for distributing Fioricet.

We apply a two-step qualified immunity analysis: we ask "(1) whether the plaintiff sufficiently alleged the violation of a constitutional right, and (2) whether the right was 'clearly established' at the time of the official's conduct."[169] Our Supreme Court explained qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law."[170]

24

To determine whether a right is "clearly established," we ask whether "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."[171] This inquiry requires we look at "the specific context of the case," rather than defining the constitutional right "as a broad general proposition."[172] "'If the officer's mistake as to what the law requires is reasonable,' the officer is entitled to qualified immunity."[173]

### i. Attorney Marks and Investigator Brill reasonably believed they could prosecute Dr. Karkalas for selling Fioricet on the internet.

Attorney Marks and Investigator Brill argue they did not violate "clearly established" law because they reasonably believed the Drug Enforcement Agency criminalized the sale of Fioricet based on the law at the time of the indictment. Dr. Karkalas does not deny he distributed Fioricet and Fioricet contains butalbital, a controlled substance. He instead argues Attorney Marks and Investigator Brill unlawfully prosecuted him because Fioricet is not a controlled substance and thus he did not violate the Controlled Substances Act. Attorney Marks and Investigator Brill argue because several district courts—including the District Court for the District of Minnesota in Dr. Karkalas's criminal case—held the Drug Enforcement Agency did not exempt Fioricet from the criminal provisions of the Controlled Substances Act, they reasonably believed they could prosecute Dr. Karkalas for selling Fioricet.

Attorney Marks and Investigator Brill cite three district court cases—including Dr. Karkalas's own criminal case—denying criminal defendants' motions to dismiss an indictment for the sale of Fioricet.[174] The district court in *United States v. Williams* ruled three years before Dr. Karkalas's 2013 indictment, while the court in *United States v. Riccio* ruled two years before Dr. Karkalas moved to dismiss his indictment. Dr. Karkalas cites a single case in which the district court dismissed an indictment for sale of Fioricet after denial of the motion in Dr. Karkalas's

case.[175] Neither party cites authority from the Supreme Court or the court of appeals concerning whether the United States can prosecute for sale of Fioricet under the Controlled Substances Act.

In *Williams*, the District Court for the Western District of Oklahoma upheld an indictment for sale of Fioricet without a valid prescription in 2010, three years before Dr. Karkalas's indictment.[176] The United States charged Mr. Williams with violating the Controlled Substances Act for conspiring to sell Fioricet on the internet without valid prescriptions.[177] Mr. Williams moved to dismiss the indictment arguing Fioricet is not a controlled substance under the Act.

The district court denied Mr. Williams's motion to dismiss. The court explained Fioricet contains butalbital, a derivative of barbituric acid.[178] Under the Controlled Substances Act, Congress classifies as a Schedule III drug "[a]ny substance which contains any quantity of a derivative of barbituric acid[.]"[179] Under Section 811, the Drug Enforcement Agency may "exempt any compound, mixture, or preparation containing a controlled substance from the application" of the Act.[180] In its Exempting Regulation, the Agency exempted Fioricet from the application of several provisions of the Act "for administrative purposes only."[181] The court explained the Agency did not exempt Fioricet from the criminal provisions of the Act, including the provision under which the United States charged Mr. Williams.[182] The court denied the motion to dismiss the indictment holding the United States could prosecute Mr. Williams for sale of Fioricet without a valid prescription.[183]

In *Riccio*, a grand jury indicted ten defendants for conspiring to sell Fioricet online using an internet pharmacy company.[184] The grand jury returned an indictment against Mr. Lasher under 21 U.S.C. § 841(h), prohibiting a person from "deliver[ing], distribut[ing], or dispens[ing] a controlled substance by means of the Internet."[185] The United States argued Fioricet is a controlled substance because it contains butalbital, a Schedule III controlled substance under the Controlled

Substances Act.[186] Mr. Lasher moved to dismiss the indictment arguing the Drug Enforcement Agency exempted Fioricet from the Controlled Substances Act.

The District Court for the Southern District of New York in August 2014 denied Mr. Lasher's motion to dismiss holding, in agreement with the district court in *Williams*, the Drug Enforcement Agency did not exempt Fioricet from the criminal provisions of the Controlled Substances Act. The court found the decision in *Williams* constituted "the only judicial precedent on point."[187] The court explained Congress defined Schedule III controlled substances under the Act to include "[a]ny substance which contains any quantity of a derivative of barbituric acid, or any salt of a derivative of barbituric acid."[188] Since Fioricet contains butalbital, a barbituric acid derivative, the district court found "there is no dispute" Fioricet is a Schedule III drug.[189]

The district court further explained Congress under the Act allows the Drug Enforcement Agency to "exempt any compound, mixture, or preparation containing a controlled substance from the application of all or any part" of the subchapter of the Controlled Substance Act dealing with Control and Enforcement.[190] The Drug Enforcement Agency exempted Fioricet from certain sections of the Act "for administrative purposes only."[191] But the district court held based on the "plain language" of the Exempting Regulation the Drug Enforcement Agency did not exempt Fioricet from the criminal provisions of the Act.[192] The court explained the statutory and regulatory framework of the Controlled Substance Act shows Congress intended to separate administrative and criminal enforcement of the Act.[193] The Drug Enforcement Agency exempted Fioricet from the Act's administrative regulations concerning "registration, labeling, packaging, record-keeping and security requirements."[194] Because the Drug Enforcement Agency did not expressly exempt Fioricet from the criminal provision under which the United States charged Mr. Lasher, the court held the Drug Enforcement Agency did not intend to exempt Fioricet from criminal enforcement.

27

The court cited the decision in *Williams* to support its holding.[195] The district court also rejected the defendant's argument for vagueness in the statutory scheme.[196]

In his criminal case, Dr. Karkalas moved to dismiss the indictment against him arguing Fioricet is not a "controlled substance" under the Controlled Substances Act because (1) the Drug Enforcement Agency did not list Fioricet on any schedules and (2) the Drug Enforcement Agency listed Fioricet on the "Exempt Prescription Products List."[197] The District Court for the District of Minnesota held "the plain language of the Exempting Regulation" shows "Fioricet is not exempt from the criminal provisions of the [Controlled Substances Act]."[198] The court explained the Drug Enforcement Agency exempted Fioricet from portions of the Controlled Substances Act "for administrative purposes only."[199] The district court further explained the district courts in *Williams* and *Riccio* also denied motions to dismiss indictments holding the Drug Enforcement Agency only exempted Fioricet from administrative regulations concerning labeling and packaging, but not the criminal provisions of the Controlled Substances Act.[200]

Dr. Karkalas cites a single case in which a district court granted a motion to dismiss holding the Drug Enforcement Agency exempted Fioricet from the criminal provisions of the Controlled Substances Act.[201] The United States charged the defendant in *United States v. Akinyoyenu* with selling Fioricet without a valid prescription.[202] The district court cited *Riccio*, *Williams*, and Mr. Karkalas's criminal case and agreed with these courts the Drug Enforcement Agency considers Fioricet a controlled substance.[203] But the court explained the Drug Enforcement Agency exempted Fioricet from the Section 829 of the Act requiring a prescription for sale of a Schedule III controlled substance.[204] Thus, the court explained because the Agency exempted Fioricet from the regulation requiring a prescription to sell a drug, it did not intend to criminalize the sale of Fioricet without a valid prescription.[205] The court believed the Agency accidentally left the phrase

"for administrative purposes only" in the Exempting Regulation.[206] The court admitted the scope of regulations concerning Fioricet was "more convoluted than for the usual case[.]"[207]

The district court in *Akinyoyenu* distinguished Dr. Karkalas's criminal case. The court explained unlike the defendant in *Akinyoyenu*, the United States also charged Dr. Karkalas with violating Section 831 of the Act mandating a person selling drugs through an online pharmacy must disclose certain information on the pharmacy's website.[208] The court explained the Drug Enforcement Agency did not exempt Fioricet from Section 831.[209]

Qualified immunity bars Dr. Karkalas's claims for unlawful prosecution and detention against Attorney Marks and Investigator Brill. District courts at the time of Dr. Karkalas's indictment rejected the argument the Drug Enforcement Agency exempted Fioricet from criminal provisions of the Controlled Substances Act. Even considering the decision in *Akinyoyenu*, a federal official could not be certain pursuing a conviction for selling Fioricet violated a citizen's Fourth Amendment rights. Qualified immunity bars Dr. Karkalas's claims unless "it would be clear to a reasonable officer" Attorney Marks's and Investigator Brill's conduct "was unlawful in the situation [they] confronted."[210] Other district courts held the Drug Enforcement Agency did not exempt Fioricet from criminal provisions of the Act, including the District Court for the District of Minnesota in Dr. Karkalas's case. We cannot say it would be clear to an officer prosecuting Dr. Karkalas's case "was unlawful." Although Dr. Karkalas argues the Food and Drug Administration did not specifically designate Fioricet a controlled substance, he admits Congress designated butalbital, an ingredient in Fioricet, a controlled substance. On August 30, 2018, the District Court for the Southern District of New York denied a habeas petition for a conviction for selling Fioricet rejecting the argument Fioricet is not a controlled substance.[211]

29

Dr. Karkalas also argues Fioricet is not a controlled substance because on May 24, 2011, Michele M. Leonhart, the Administrator of the Drug Enforcement Agency testified before the United States Senate "Fioricet was exempt from the purview of the CSA."[212] But on August 30, 2011, Deputy Administrator Joseph T. Rannazzisi clarified Ms. Leonhart did "not intend[] to deviate in any way from 21 C.F.R. 1308.32 [i.e., the Exempting Regulation.]"[213] Rather, Mr. Rannazzisi affirmed "the exemption from certain provisions of the Controlled Substances Act and [Drug Enforcement Agency] regulations is for administrative purposes only. Any person who unlawfully distributes Fioricet remains subject to criminal liability under the Act."[214]

We do not opine whether Fioricet is a controlled substance. But based on the uncertainty of the law at the time of Mr. Karkalas's trial, we cannot say Attorney Marks and Investigator Brill acted unreasonably in prosecuting Dr. Karkalas for selling Fioricet on the Internet.

> ### ii. Attorney Marks and Investigator Brill reasonably relied on the indictment in establishing probable cause for prosecuting Dr. Karkalas.

Attorney Marks and Investigator Brill also argue they did not violate any clearly established right because they relied on the grand jury's indictment in prosecuting Dr. Karkalas. Dr. Karkalas admits a grand jury indicted him.[215]

To establish a malicious prosecution claim, Dr. Karkalas "must plead sufficient facts to support a reasonable inference that the defendants acted without probable cause and are not entitled to qualified immunity."[216] A person's right "to be free from prosecutions on criminal charges that lack probable cause" is clearly established.[217] But in malicious prosecution actions, "a grand jury indictment or presentment constitutes prima facie evidence of probable cause to prosecute[.]"[218]

In *Cobb v. Truong*, a grand jury indicted Mr. Cobb with various crimes stemming from the plaintiff's alleged involvement with a drug-trafficking conspiracy.[219] The prosecutor took the

charges to trial, but a jury acquitted Mr. Cobb on all counts.[220] Mr. Cobb sued the prosecutor for malicious prosecution. Like Dr. Karkalas, Mr. Cobb alleged the prosecutor made false statements to the grand jury and withheld information regarding his role in the conspiracy to obtain an indictment.[221]

The District Court for the Western District of Pennsylvania explained to plead a malicious prosecution claim, the plaintiff "must plead sufficient facts to support a reasonable inference that the defendants acted without probable cause."[222] Noting a grand jury indictment "constitutes prima facie evidence of probable cause to prosecute," the court explained the plaintiff must allege facts showing "the indictment was procured by fraud, perjury or other corrupt means" to overcome the presumption of probable cause.[223] The court held the plaintiff failed to plead facts to overcome the presumption of probable cause.[224] The court held plaintiff's legal conclusions of a lack of probable cause "[did] not supply the factual matter needed to proceed with rebutting the presumption of regularity from the grand jury's return of the indictment."[225]

Dr. Karkalas admits a grand jury indicted him in 2013.[226] But he merely concludes the lack of probable cause because Attorney Marks and Investigator Brill made "knowingly false presentations" to the grand jury.[227] Beyond conclusions, he fails to allege the "false presentations" Attorney Marks and Investigator Brill made to the grand jury. As the district court explained in *Cobb*, Dr. Karkalas cannot plead lack of probable cause with such bare conclusions.[228] He bases his claim for lack of probable cause on his allegation Attorney Marks and Investigator Brill knew Fioricet is not a controlled substance. But most courts facing this issue—including the district court in Dr. Karkalas's case—held the Drug Enforcement Agency did not exempt Fioricet from criminal provisions of the Controlled Substances Act. We cannot say "it would be clear to a reasonable officer" the conduct here "was unlawful in the situation [they] confronted."

31

Dr. Karkalas argues Attorney Marks and Investigator Brill prosecuted without probable cause because they lacked evidence Dr. Karkalas knew Fioricet is a controlled substance but told the grand jury Dr. Karkalas knew Fioricet is a controlled substance. He alleges Attorney Marks and Investigator Brill "never had any evidence that Dr. Karkalas knew he was breaking the law, even though violations of the [Controlled Substances Act] have a *mens rea* requirement."[229]

Dr. Karkalas still fails to rebut the presumption of probable cause because he fails to allege facts showing Attorney Marks and Investigator Brill procured the indictment through "fraud, perjury, or other corrupt means."[230] Dr. Karkalas admits he prescribed Fioricet and Fioricet contains butalbital, a controlled substance. The weight of authority at the time of Dr. Karkalas's indictment showed the sale of Fioricet violated the Controlled Substances Act. The district court in his criminal case denied Dr. Karkalas's motion to dismiss the indictment charging him with the sale of Fioricet.[231] Concerning *mens rea*, the trial court in rulings following Dr. Karkalas's trial explained the United States argued to establish the *mens rea* requirement in the case, the Controlled Substances Act "only requires that [the United States] prove the defendants knowingly distributed Fioricet, not that the defendants knew Fioricet was a controlled substance."[232] The trial court rejected this argument and explained the United States must prove Dr. Karkalas knew he distributed a controlled substance, not merely he knew he distributed Fioricet.[233] The trial court found the United States misinterpreted Supreme Court precedent concerning what the United States must prove for a defendant's state of mind under the Controlled Substances Act.[234] But the district court found even considering the mistake concerning *mens rea* for the Controlled Substances Act charge, the United States did not prosecute without probable cause.[235]

Given the secrecy of the grand jury proceeding, we question how Dr. Karkalas knows what Attorney Marks and Investigator Brill told the grand jury concerning his *mens rea* for the crime,

especially considering the trial court in his criminal case explained Attorney Marks based her argument on a different—although mistaken—understanding of the *mens rea* requirement. Even so, the district court explained notwithstanding the mistake concerning the *mens rea* requirement, Attorney Marks did not prosecute without probable cause.[236] Dr. Karkalas alleges Attorney Marks and Investigator Brill knew Dr. Karkalas did not know Fioricet is a controlled substance because he told them. But Attorney Marks and Investigator Brill need not "accept a suspect's innocent explanation at face value."[237] A prosecutor would never bring a case if a suspect's assertion of innocence negated probable cause.

Attorney Marks and Investigator Brill relied on the grand jury's indictment and Dr. Karkalas fails to allege facts showing they procured the indictment through improper means. Attorney Marks and Investigator Brill did not violate Dr. Karkalas's clearly established rights as they relied on the grand jury's indictment to prosecute Dr. Karkalas. Qualified immunity bars Dr. Karkalas's claims against Attorney Marks and Investigator Brill.

We dismiss Dr. Karkalas's claims against Attorney Marks and Investigator Brill.

## B.    We dismiss Dr. Karkalas's Federal Tort Claims Act claims against the United States.

Dr. Karkalas sues the United States under the Federal Tort Claims Act for malicious prosecution. The United States argues it has not waived sovereign immunity because (1) Attorney Marks and Investigators are not "investigative or law enforcement officers" under the Act and (2) the discretionary function exception applies. The United States also argues Dr. Karkalas fails to state a claim for malicious prosecution.

33

### 1. Attorney Marks is not an investigative or law enforcement officer under 28 U.S.C. § 2680(h).

The United States argues Dr. Karkalas cannot sue under the Federal Tort Claims Act because Attorney Marks and Investigator Brill are not "investigative or law enforcement officers."

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit."[238] Congress partially waived sovereign immunity with the Federal Tort Claims Act, the "exclusive waiver of sovereign immunity for actions sounding in tort against the United States, its agencies and officers acting within their official capacity."[239] Under the Act, we have jurisdiction over damage claims against the United States "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."[240]

Congress did not waive sovereign immunity for claims "arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights[.]"[241] But the exception to the waiver does not apply to "investigative or law enforcement officers of the United States Government."[242] Dr. Karkalas may sue an "investigative or law enforcement officer" under the Act. Congress defined "investigative or law enforcement officer" as a United States officer "empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law."[243] Prosecutors are not "investigative or law enforcement officers" under the Federal Tort Claims Act.[244]

The United States argues Attorney Marks and Investigator Brill do not qualify as "investigative or law enforcement officers" under section 2680(h) of the Federal Tort Claims Act.

Attorney Marks, as a prosecutor, is not an "investigative or law enforcement officer" under the Act. The United States has not waived sovereign immunity for Attorney Marks's conduct.

Investigator Brill is a diversion investigator with the Drug Enforcement Agency. Under its regulations, the Agency authorizes diversion investigators "to administer oaths and serve subpoenas under 21 U.S.C. §§ 875 and 876; to conduct administrative inspections and execute administrative inspection warrants under 21 U.S.C. §§ 878(2) and 880; to seize property incident to compliance and registration inspections and investigations under 21 U.S.C. § 881; and to seize or place controlled substances under seal pursuant to 21 U.S.C. § 824."[245]

Only one court decided whether a Drug Enforcement Agency diversion investigator is an "investigative or law enforcement officer" under the Federal Tort Claims Act.[246] In *Nguyen Estate of Carlisle*, the District Court for the Northern District of Florida held diversion investigators are "investigative or law enforcement officers" because they "are empowered to seize property" under the Agency's regulations, and one of the three alternative characteristics of an "investigative or law enforcement officer" in Section 2680(h) is the ability to seize evidence.[247] We agree. The Agency authorizes diversion investigators to seize evidence. Investigator Brill is an "investigative or law enforcement officer" under the Federal Tort Claims Act.

We dismiss Dr. Karkalas's claims against the United States to the extent he bases them on Attorney Marks's conduct since Attorney Marks is not an "investigative or law enforcement officer."

### 2. The discretionary function exception under 28 U.S.C. § 2680(a) bars Dr. Karkalas's claims against the United States.

Attorney Marks and Investigator Brill also argue the discretionary function exception in the Federal Tort Claims Act bars Dr. Karkalas's claims. Under the discretionary function exception, Congress bars suits against the United States challenging "the exercise or performance

or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused."[248]

The Supreme Court developed a two-part test to determine whether the discretionary function exception applies.[249] We first ask whether "the act giving rise to the alleged injury and thus the suit involves an 'element of judgment or choice.'"[250] If so, we ask "whether that judgment is of the kind that the discretionary function exception was designed to shield."[251] Investigative activity is "precisely the kind of policy-rooted decisionmaking that section 2680(a) was designed to safeguard."[252]

Investigative decisions and decisions to prosecute fall within the discretionary function exception.[253] In *Barbieri v. United States*, an FBI agent investigated an attorney for assisting his client with bankruptcy fraud.[254] Following the investigation, a grand jury indicted the attorney for bankruptcy fraud but a jury later acquitted the attorney.[255] Like Dr. Karkalas, the attorney sued for malicious prosecution under the Federal Tort Claims Act. The attorney alleged the FBI agent commenced a "sham investigation" because the attorney did not provide his client's file to the United States.[256] He also alleged the prosecutor and the FBI agent presented "patently false and misleading information" to the grand jury.[257]

Judge Goldberg in our District found the discretionary function exception barred the attorney's malicious prosecution claims. Under the first element of the two-part test, Judge Goldberg found the investigation and decision to prosecute are "entirely discretionary."[258] Under the second element, Judge Goldberg explained the discretionary exception function shields decisions "grounded in social, economic, and political policy[.]"[259] He explained the discretionary function exception bars the attorney's claims because the investigation and decision to prosecute

36

are "policy-based in nature"—conduct the discretionary function exception "was designed to shield."[260]

Dr. Karkalas alleges Investigator Brill "focused her investigations on the methods by which prescription drugs are diverted into illegal markets."[261] He alleges Investigator Brill investigated Rx Limited and its online activity involving Fioricet and determined it prescribed Fioricet without a doctor-patient relationship.[262] Investigator Brill brought the case to the U.S. Attorney's Office in Minneapolis and then to the Consumer Protection Branch of the Department of Justice in Washington, D.C.[263] Attorney Marks in the Consumer Protection Branch decided to prosecute the case. Like the attorney in *Barbieri*, Dr. Karkalas alleges Attorney Marks and Investigator Brill launched an "unlawful investigation and prosecution of" him and "knowing[ly] present[ed] . . . false and misleading testimony and evidence to the Grand Jury[.]"[264]

The discretionary function exception shields Investigator Brill's and Attorney Marks's conduct.[265] The investigation and decision to prosecute Dr. Karkalas are discretionary. Investigator Brill's and Attorney Marks's determinations are policy-based, and thus the discretionary function exception shields this conduct from tort liability, even for claims alleging false statements to a grand jury.[266]

Dr. Karkalas argues our Court of Appeals held if a plaintiff alleges a federal official violated his constitutional rights—like Dr. Karkalas does here—a court could not apply the discretionary function exception "since federal officials do not possess discretion to commit such violations."[267] Judge Goldberg faced the same argument. He persuasively explained the Supreme Court declined to recognize constitutional torts under the Federal Tort Claims Act after our Court of Appeals' holding in *Pooler v. United States.*[268] We agree with Judge Goldberg as the import of the Supreme Court's precedent. Dr. Karkalas's argument fails.

37

The United States did not waive sovereign immunity for Dr. Karkalas's claims.

### 3.    Dr. Karkalas fails to state a claim for malicious prosecution.

The United States argues even if sovereign immunity does not bar his claim, Dr. Karkalas fails to state a claim for malicious prosecution.

Congress does not provide a cause of action under the Federal Tort Claims Act but rather provides a partial waiver of sovereign immunity for torts against the United States. Thus, Dr. Karkalas's malicious prosecution claim against the United States arises under state law.[269] An essential element of malicious prosecution, under either Minnesota or Pennsylvania law, is a prosecution without probable cause.[270]

Dr. Karkalas bases his claim for malicious prosecution on his assertion Fioricet is not a controlled substance under the Controlled Substances Act. But as we explained in detail, Attorney Marks and Investigator Brill relied on two district court cases, and the district court in Dr. Karkalas's criminal case, holding Fioricet is a controlled substance and the Drug Enforcement Agency did not exempt Fioricet from the criminal provisions of the Controlled Substances Act. Dr. Karkalas also admits a grand jury indicted him. An indictment provides a rebuttable presumption probable cause existed.[271]

Dr. Karkalas fails to allege facts showing Attorney Marks and Investigator Brill prosecuted him without probable cause. He fails to state a claim for malicious prosecution.

### III.    Conclusion.

In an accompanying Order, we grant Attorney Marks's and Investigator Brill's motion to dismiss Dr. Karkalas's *Bivens* claim for unlawful prosecution and pretrial detention. We also grant the United States' motion to dismiss Dr. Karkalas's claims for malicious prosecution under the Federal Tort Claims Act.

38

[1] ECF Doc. No. 8 ¶ 28.

[2] *Id.* at ¶ 31.

[3] *Id.* at ¶ 35.

[4] *Id.* at ¶ 36.

[5] *Id.* at ¶ 45.

[6] *Id.* at ¶ 36.

[7] *Id.* at ¶ 56.

[8] *Id.* at ¶ 38.

[9] *Id.* at ¶ 39.

[10] *Id.*

[11] *Id.* at ¶ 40.

[12] *Id.*

[13] *Id.*

[14] *Id.* at ¶ 41.

[15] *Id.* at ¶¶ 8, 44.

[16] *United States v. Oz*, No. 13-273, 2016 WL 1183041, at *2 (D. Minn. Mar. 28, 2016).

[17] ECF Doc. No. 8 ¶ 45.

[18] *Id.* at ¶ 46.

[19] *Id.* at ¶¶ 46-47.

[20] *Id.* at ¶¶ 48-49.

[21] *Id.* at ¶ 50.

[22] *Id.* at ¶ 66.

[23] *Id.* at ¶ 64.

[24] *Id.* at ¶ 65.

[25] *Id.* at ¶¶ 1, 67.

[26] *Id.* at ¶ 68.

[27] *Id.* at ¶ 69.

[28] *United States v. Oz*, No. 13-273, 2017 WL 3531521, at *1 (D. Minn. Aug. 17, 2017).

[29] *Id.*

[30] ECF Doc. No. 8 ¶ 80.

[31] *Id.* at ¶ 68.

[32] *Id.* at ¶ 11.

[33] *Id.* at ¶ 12.

[34] When considering a motion to dismiss "[w]e accept as true all allegations in the plaintiff's complaint as well as all reasonable inferences that can be drawn from them, and we construe them in a light most favorable to the non-movant." *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010)). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Our Court of Appeals requires us to apply a three-step analysis under a 12(b)(6) motion: (1) "it must 'tak[e] note of the elements [the] plaintiff must plead to state a claim;'" (2) "it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth;'" and, (3) "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 675, 679).

[35] ECF Doc. No. 12.

[36] ECF Doc. No. 14.

[37] Fed. R. Civ. P. 4(k) ("Serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located[.]").

[38] 42 Pa. C.S. § 5322(b).

[39] *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007).

[40] *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984)).

[41] *Id.* (emphasis supplied).

[42] *Id.* at 285.

[43] *Id.* at 286.

[44] *Id.*

[45] *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

[46] *Id.* at 284.

[47] *Id.* at 282.

[48] *Id.* at 291.

[49] *Id.* at 288-89.

[50] *Id.* at 291.

[51] ECF Doc. No. 8 ¶ 17.

[52] *Id.* at ¶ 22.

[53] ECF Doc. No. 12-1, at p. 24.

[54] ECF Doc. No. 8 ¶ 17.

[55] *Walden*, 571 U.S. at 286.

[56] 28 U.S.C. § 1391(b).

[57] ECF Doc. No. 8 ¶ 17.

[58] *Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994).

[59] *Id.* at 295.

[60] *RAIT P'ship, L.P. v. Fieldstone Lester Shear & Denberg, LLP*, No. 09-28, 2009 WL 3297310, at *5 (D. Del. Oct. 14, 2009) (citing *Traynor v. Liu*, 495 F. Supp. 2d 444, 450 (D. Del. 2007)).

[61] *Fisher v. King*, No. 15-2081, 2015 WL 7016527, at *2 (M.D. Pa. Nov. 12, 2015) (citing *Cottman*, 36 F.3d at 294).

[62] ECF Doc. No. 12-1, at p. 25.

[63] ECF Doc. No. 8 ¶¶ 46-47.

[64] *Id.* at ¶ 17.

[65] 403 U.S. 388 (1971).

[66] *Turner v. Doe*, No. 15-5942, 2018 WL 2278096, at *3 (D.N.J. May 18, 2018).

[67] *Bivens*, 403 U.S. at 389.

[68] *Id.*

[69] *Id.* at 389-90.

[70] *Id.* at 390.

[71] *Id.* at 397.

[72] *Id.* at 392 (quoting *Bell v. Hood*, 327 U.S. 678, 684 (1946)).

[73] *Bistrian v. Levi*, 912 F.3d 79, 89 (3d Cir. 2018) (quoting *Vanderklok v. United States*, 868 F.3d 189, 200 (3d Cir. 2017)).

[74] 137 S. Ct. 1843, 1853 (2017).

[75] *Ziglar*, 137 S. Ct. at 1853-54.

[76] *Id.* at 1857 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)).

[77] *Bivens*, 403 U.S. at 397.

[78] *Davis v. Passman*, 442 U.S. 228, 230 (1979).

[79] *Carlson v. Green*, 446 U.S. 14, 19 (1980).

[80] *Ziglar*, 137 S. Ct. at 1857.

[81] *Id.* at 1860.

[82] *Id.* at 1864.

[83] *Id.*

[84] *Id.* at 1861 (allowing a damages claim in this context would "interfere in an intrusive way with sensitive functions of the Executive Branch").

[85] *Id.*

[86] *Id.* at 1862-63.

[87] *Id.* at 1865.

[88] *Vanderklok*, 868 F.3d at 200 (citing *Ziglar*, 137 S. Ct. at 1856).

[89] *Id.* (citing *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007)).

[90] *Ziglar*, 137 S. Ct. at 1859.

[91] *Id.* at 1860.

[92] *Vanderklok*, 868 F.3d at 200 (quoting *Minneci v. Pollard*, 565 U.S. 118, 126 (2012)).

[93] *Ziglar*, 137 S. Ct. at 1858.

[94] *Vanderklok*, 868 F.3d at 205.

[95] *Ziglar*, 137 S. Ct. at 1860.

[96] *Lane v. Schade*, No. 15-1568, 2018 WL 4571672, at *6 (D.N.J. Sept. 24, 2018).

[97] *Id.* at *2.

[98] *Id.* at *3.

[99] *Id.* at *7.

[100] *Id.* ("[T]he Court will not recognize a *Bivens* remedy for Lane's claims of malicious abuse of process or malicious prosecution.").

[101] *Lee v. Janosko*, No. 18-1297, 2019 WL 2392661, at *4 (W.D. Pa. June 6, 2019).

[102] 18 U.S.C. § 3501.

[103] *Janosko*, 2019 WL 2392661, at *5.

[104] *Id.* (quoting *Vennes v. An Unknown No. of Unidentified Agents of U.S.*, 26 F.3d 1448, 1452 (8th Cir. 1994)).

[105] *Ziglar*, 137 S. Ct. at 1857-58.

[106] ECF Doc. No. 8 ¶ 80 (suing under *Bivens* for "illegal prosecution of Dr. Karkalas, the unlawful seizure of and the presentation of false and misleading evidence and testimony to the Grand Jury regarding Dr. Karkalas' involvement with RXL.").

[107] *Bivens*, 403 U.S. at 389.

[108] *Farah v. Weyker*, 926 F.3d 492, 499 (8th Cir. 2019) (finding a "new context" for a *Bivens* action when plaintiff complained arresting officer presented false information to prosecutors and grand jury explaining "information-gathering and case-building activities are a different part of police work than the apprehension, detention, and physical searches at issue in *Bivens*").

[109] ECF Doc. No. 15, at p. 7.

[110] *Ziglar*, 137 S. Ct. at 1859 (explaining even when the right at issue and the "mechanism of injury" resemble one of the three *Bivens* cases, the case can still present a "new context").

[111] *Id.* at 1860 (explaining the Court recognized an implied action in *Bivens* under the Fourth Amendment and an action in *Davis* under the Fifth Amendment).

[112] *Id.* at 1859.

[113] ECF Doc. No. 15, at p. 8 (citing *Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911 (2017)).

[114] *Manuel*, 137 S. Ct. at 915.

[115] *Id.* at 919-20.

[116] *Ziglar*, 137 S. Ct. at 1859.

[117] *Manuel*, 137 S. Ct. at 919-20.

[118] *Ziglar*, 137 S. Ct. at 1858.

[119] *Wilkie*, 551 U.S. at 550.

[120] *Brunoehler v. Tarwater*, 743 F. App'x 740, 752 (9th Cir. 2018) (provision providing for civil damages for official's violation of the Wiretap Act counseled against extending *Bivens* to Fourth Amendment claim for illegal wiretap).

[121] *United States v. Oz*, No. 13-273, 2016 WL 1183041, at *7 (D. Minn. Mar. 28, 2016).

[122] 18 U.S.C. § 3006A; *United States v. Manzo*, 712 F.3d 805, 810 (3d Cir. 2013) (explaining a successful criminal defendant can move for attorneys' fees and costs under the Hyde Amendment for a "prosecution brought vexatiously, in bad faith, or so utterly without foundation in law or fact as to be frivolous").

[123] 28 U.S.C. § 2513(a).

[124] *Id.* § 2513(e).

[125] *Farah v. Weyker*, 926 F.3d 492 (8th Cir. 2019).

[126] *Id.* at 496.

[127] *Id.* at 496-97.

[128] *Id.* at 501-02.

[129] *Id.* at 500.

[130] 28 U.S.C. § 2513.

[131] *Farah*, 926 F.3d at 501.

[132] *Id.* at 502.

[133] *Id.* (quoting *Ziglar*, 137 S. Ct. at 1858).

[134] *Id.* (quoting *Ziglar*, 137 S. Ct. at 1863).

[135] ECF Doc. No. 15, at p. 10.

[136] *Oz*, 2017 WL 3531521, at *1.

[137] ECF Doc. No. 8 ¶ 70.

[138] *Ziglar*, 137 S. Ct. at 1857 (quoting *Carlson*, 446 U.S. at 18).

[139] *Vanderklok*, 868 F.3d at 206 (quoting *Wilkie*, 551 U.S. at 554).

[140] *Id.* (quoting *Ziglar*, 137 S. Ct. at 1858).

[141] *Ziglar*, 137 S. Ct. at 1858.

[142] *Farah*, 926 F.3d at 499.

[143] *Id.* at 500.

[144] *Id.*

[145] *Id.* at 501.

[146] *Id.*

[147] ECF Doc. No. 8 ¶ 80 (suing Attorney Marks and Investigator Brill for the "illegal prosecution of Dr. Karkalas, the unlawful seizure of and the presentation of false and misleading evidence and testimony to the Grand Jury regarding Dr. Karkalas' involvement with RXL").

[148] *Vanderklok*, 868 F.3d at 189.

[149] *Id.* at 194.

[150] *Id.* at 195.

[151] *Id.* at 208.

[152] *Id.* at 203 (citing 28 U.S.C. § 2680(h)).

[153] *Id.* at 208.

[154] *Id.* at 209.

[155] 49 U.S.C. § 44903(a)(2) (defining "law enforcement personnel" under the Aviation and Transportation Security Act).

[156] 28 C.F.R. § Pt. 0, Subpt. R, App. § 3(b) (regulation governing delegation of functions to officers and employees of the Drug Enforcement Agency).

[157] *Id.* at §§ 3(a)-(b).

[158] *See* 21 U.S.C. § 882.

[159] *Id.* § 882(a).

[160] *Id.* § 882(c)(5).

[161] *Id.* § 882(c)(6)(C).

[162] *McLaughlin v. Henry*, No. 19-9451, 2019 WL 2588758, at *4 (D.N.J. June 24, 2019) (quoting *Yarris v. Cty. of Delaware*, 465 F.3d 129, 135 (3d Cir. 2006)).

[163] *Burns v. Reed*, 500 U.S. 478, 485 (1991).

[164] *Newsome v. City of Newark*, No. 13-06234, 2014 WL 4798783, at *3 (D.N.J. Sept. 25, 2014) (citing *Rose v. Bartle*, 871 F.2d 331, 344 (3d Cir. 1989) (explaining solicitation of false testimony for presentation to the grand jury encompassed within "the preparation necessary to present a case" and therefore immunized)).

[165] ECF Doc. No. 8 ¶ 22.

[166] *Id.* at ¶ 45.

[167] *Id.* at ¶ 65.

[168] ECF Doc. No. 15, at p. 16 (quoting *Yarris*, 465 F.3d at 135).

[169] *L.R. v. Sch. Dist. of Philadelphia*, 836 F.3d 235, 241 (3d Cir. 2016) (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)); *see also D.C. v. Wesby*, 138 S. Ct. 577, 589 (2018).

[170] *Ziglar*, 137 S. Ct. at 1867 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

[171] *Couden v. Duffy*, 446 F.3d 483, 492 (3d Cir. 2006) (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)).

[172] *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015).

[173] *Couden*, 446 F.3d at 492 (quoting *Saucier*, 533 U.S. at 205).

[174] *United States v. Oz*, No. 13-273, 2016 WL 1183041 (D. Minn. Mar. 28, 2016); *United States v. Riccio*, 43 F. Supp. 3d 301 (S.D.N.Y. 2014); *United States v. Williams*, No. 10-0216, 2010 WL 4669180 (W.D. Okla. Nov. 9, 2010).

[175] *United States v. Akinyoyenu*, 199 F. Supp. 3d 106 (D.D.C. 2016).

[176] *Williams*, 2010 WL 4669180, at *1.

[177] *Id.*

[178] *Id.* at *1 n.2.

[179] 21 U.S.C. § 812(c) (list of Schedule III drugs).

[180] *Id.* § 811(g)(3).

[181] 21 C.F.R. § 1308.32.

[182] *Williams*, 2010 WL 4669180, at *1.

[183] *Id.* at *1.

[184] *Riccio*, 43 F. Supp. 3d at 304.

[185] 21 U.S.C. § 841(h).

[186] *Riccio*, 43 F. Supp. 3d at 304 (citing 21 U.S.C. § 841(b)(1)(E)).

[187] *Id.* at 305.

[188] *Id.* at 304 (citing 21 U.S.C. § 812, Schedule III, Part (b)(1)).

[189] *Id.*

[190] *Id.* (quoting 21 U.S.C. § 811(g)).

[191] 21 C.F.R. § 1308.32.

[192] *Riccio*, 43 F. Supp. 3d at 305.

[193] 21 C.F.R. § 1301.41 ("Any hearing under this part shall be independent of, and not in lieu of, criminal prosecutions or other proceedings under the Act or any other law of the United States.").

[194] *Riccio*, 43 F. Supp. 3d at 305.

[195] *Id.* (citing *Williams*, 2010 WL 4669180, at *1 ("The Attorney General/DEA could have exempted Fioricet 'from the application of all' of subchapter I of the [Controlled Substances Act] but did not.")).

[196] *Id.* at 307.

[197] *United States v. Oz*, No. 13-273, 2016 WL 11396496, at *4 (D. Minn. Feb. 1, 2016), *report and recommendation adopted*, No. 13-273, 2016 WL 1183041 (D. Minn. Mar. 28, 2016).

[198] *Oz*, 2016 WL 1183041, at *6.

[199] *Id.* at *4 (quoting 21 C.F.R. § 1308.32).

[200] *Id.* at *5.

[201] *Akinyoyenu*, 199 F. Supp. 3d at 106.

[202] *Id.* at 108.

[203] *Id.* at 112.

[204] *Id.*

[205] *Id.* at 120.

[206] *Id.* at 117.

[207] *Id.* at 114.

[208] 21 U.S.C. § 831(c) (Internet pharmacy site disclosure information).

[209] *Akinyoyenu*, 199 F. Supp. 3d at 120 (quoting *Oz*, 2016 WL 1183041, at *7).

[210] *Couden*, 446 F.3d at 492 (quoting *Saucier*, 533 U.S. at 202).

[211] *See Lasher v. United States*, No. 12-868, 2018 WL 3979596, at *4 (S.D.N.Y. Aug. 20, 2018).

[212] ECF Doc. No. 8 ¶ 58. We may consider public documents like Congressional testimony and Drug Enforcement Agency memoranda as these are matters of public record. *See Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (explaining in deciding a motion to dismiss we may consider "documents that are attached to or submitted with the complaint" and "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case"). Dr. Karkalas relies on Administrator Leonhart's statement in his complaint. Attorney Marks filed Deputy Administrator Rannazzisi's response to Administrator Leonhart on the record in Dr. Karkalas's criminal proceeding.

[213] ECF Doc. No. 12-2, at p. 54.

[214] *Id.*

[215] ECF Doc. No. 8 ¶ 44.

[216] *Spiker v. Whittaker*, 553 F. App'x 275, 278 (3d Cir. 2014).

[217] *Andrews v. Sculli*, 853 F.3d 690, 705 (3d Cir. 2017).

[218] *Palma v. Atl. Cty.*, 53 F. Supp. 2d 743, 756 (D.N.J. 1999) (quoting *Rose v. Bartle*, 871 F.2d 331, 353 (3d Cir. 1989)); *Goodwin v. Conway*, 836 F.3d 321, 329 (3d Cir. 2016) (reaffirming holding in *Rose* indictment creates "a rebuttable presumption of probable cause").

[219] *Cobb v. Truong*, No. 13-1750, 2015 WL 1405438, at *3 (W.D. Pa. Mar. 26, 2015).

[220] *Id.* at *4.

[221] *Id.* at *8.

[222] *Id.*

[223] *Id.* at *11.

[224] *Id.* at *9 (quoting *Woodyard v. Cty. of Essex*, 514 F. App'x 177, 183 (3d Cir. 2013)).

[225] *Id.* at *10 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

[226] ECF Doc. No. 8 ¶ 44.

[227] *Id.* at ¶ 86.

[228] *Cobb*, 2015 WL 1405438, at *10 ("[T]endering only broad and generalized labels and conclusions or naked assertions that are devoid of further factual development will not supply the factual matter needed to proceed with rebutting the presumption of regularity from the grand jury's return of the indictment."); *see also Blassengale v. City of Philadelphia*, No. 11-3006, 2012 WL 4510875, at *6 (E.D. Pa. Sept. 28, 2012) (dismissing malicious prosecution claim explaining plaintiff merely concluded without alleging facts defendant "fabricated evidence or relied heavily on the questionable testimony of a compromised complaining witness to secure a grand jury indictment").

[229] ECF Doc. No. 8 ¶ 71.

[230] *See Outen v. Office of Bergen Cty. Prosecutor*, No. 12-123, 2013 WL 6054586, at *4 (D.N.J. Nov. 14, 2013) ("Mere allegations of wrongful conduct before the grand jury, without specifically identifying evidence that was offered by corrupt means, fails to rebut the presumption of probable cause provided by a grand jury indictment.").

[231] *Oz*, 2016 WL 1183041, at *1.

[232] *Oz*, 2017 WL 3531521, at *4 (co-defendant's post-trial motion for attorneys' fees under the Hyde Amendment).

[233] *Id.*

[234] *Id.* (citing *McFadden v. United States*, 135 S. Ct. 2298 (2015)).

[235] *Id.* at *7.

[236] *Id.* (explaining the government could rely on "circumstantial" evidence—like the "volume of drugs being dispensed"—to establish intent to support probable cause, not necessarily direct evidence).

[237] *Wesby*, 138 S. Ct. at 593.

[238] *Pellegrino v. United States Transportation Sec. Admin., Div. of Dep't of Homeland Sec.*, 896 F.3d 207, 213 (3d Cir.), *reh'g en banc granted sub nom. Pellegrino v. United States of Am. Transportation Sec. Admin.*, 904 F.3d 329 (3d Cir. 2018).

[239] *Wilson v. Rackmill*, No. 87-0456, 1990 WL 63504, at *7 (E.D. Pa. May 11, 1990).

[240] 28 U.S.C. § 1346(b)(1).

[241] *Id.* § 2680(h).

[242] *Id.*

[243] *Id.*

[244] *See Adams v. Boden*, No. 18-4408, 2018 WL 5923448, at *3 (E.D. Pa. Nov. 9, 2018) ("As a prosecutor, Boden does not qualify as an 'investigative or law enforcement officer' within the meaning of § 2680(h)."); *Johnson v. Manzo*, No. 18-2608, 2019 WL 1470991, at *2 (D.D.C. Apr. 2, 2019) (dismissing plaintiff's claim for malicious prosecution alleging prosecutor provided false testimony to grand jury explaining federal prosecutor is not an investigative or law enforcement officer under § 2680(h)).

[245] 28 C.F.R. § Pt. 0, Subpt. R, App. § 3.

[246] *Nguyen v. Estate of Carlisle*, No. 04-26, 2006 WL 1653371 (N.D. Fla. June 9, 2006), *rev'd sub nom. Nguyen v. United States*, 545 F.3d 1282 (11th Cir. 2008), *opinion superseded on reconsideration*, 556 F.3d 1244 (11th Cir. 2009), *and rev'd sub nom. Nguyen v. United States*, 556 F.3d 1244 (11th Cir. 2009).

[247] *Id.* at *4 (citing 28 U.S.C. § 2680(h)).

[248] 28 U.S.C. § 2680(a).

[249] *United States v. Gaubert*, 499 U.S. 315, 322 (1991).

[250] *Barbieri v. United States*, No. 16-3748, 2017 WL 4310255, at *4 (E.D. Pa. Sept. 28, 2017) (quoting *United States v. Gaubert*, 499 U.S. 315, 322 (1991)).

[251] *Id.* (quoting *Gaubert*, 499 U.S. at 322-23).

[252] *Kelly v. United States*, 924 F.2d 355, 362 (1st Cir. 1991).

[253] *Barbieri*, 2017 WL 4310255, at *6 (citing *Pooler v. United States*, 787 F.2d 868, 870 (3d Cir. 1986)) ("The conduct described in the Amended Complaint relates to the investigation into Mr. Barbieri and the decision to prosecute him, and such decisions are entirely discretionary.").

[254] *Id.* at *2.

[255] *Id.*

[256] *Id.*

[257] *Id.*

[258] *Id.* at *4.

[259] *Id.* at *6.

[260] *Id.*

[261] ECF Doc. No. 8 ¶ 38.

[262] *Id.* at ¶ 39.

[263] *Id.* at ¶ 40.

[264] *Id.* at ¶ 23.

[265] *Barbieri*, 2017 WL 4310255, at *6 ("Because an FBI agent's investigatory decisions and a decision to prosecute are determinations that are policy-based in nature, I find that the conduct of AUSA Eve and Agent Cosgriff is the type that the discretionary function exception was designed to shield.").

[266] *Id.*

[267] *Pooler*, 787 F.2d at 871.

[268] *Barbieri*, 2017 WL 4310255, at *6 (citing *F.D.I.C. v. Meyer*, 510 U.S. 471, 477 (1994)).

[269] *Meyer*, 510 U.S. at 478 (explaining for claims under Section 1346(b) of the Act "'law of the place' means law of the State—the source of substantive liability under the FTCA").

[270] *Brown v. Mercadante*, 687 F. App'x 220, 223 (3d Cir. 2017) (listing elements of malicious prosecution under Pennsylvania law); *Dunham v. Roer*, 708 N.W.2d 552, 569 (Minn. Ct. App. 2006) (elements for malicious prosecution under Minnesota law). The United States argues Minnesota law applies. Dr. Karkalas does not dispute this, arguing he states a claim under either Minnesota or Pennsylvania law.

[271] *Palma*, 53 F. Supp. 2d at 756 (quoting *Rose*, 871 F.2d at 353); *Goodwin*, 836 F.3d at 329 (reaffirming holding in *Rose* indictment creates "a rebuttable presumption of probable cause").